El Pueblo de Puerto Rico, recurrido, *v.* Gualberto Negrón Martínez y otros, acusados y peticionarios.

Número: CE-93-641       Resuelto: 27 de febrero de 1998

*José A. Andréu Fuentes,* del *Bufete Andréu & Crespo,* abogado de los acusados y peticionarios; *Carlos Lugo Fiol, Procurador General,* abogado de El Pueblo.

## SENTENCIA

### (En reconsideración)

El 24 de marzo de 1993, agentes del orden público diligenciaron una orden de confiscación contra la residencia de los peticionarios Gualberto Negrón Martínez y otros.[1] Durante ese trámite, los agentes encontraron material relacionado al juego ilegal de la "bolita". Correspondientemente, el Ministerio Público le imputó a los peticionarios haber infringido la Sec. 1 de la Ley Núm. 220 de 15 de mayo de 1948, según enmendada, 33 L.P.R.A. sec. 1247.[2] Luego de la vista preliminar, celebrada el 26 de abril de

---

[1] Ello ocurrió como consecuencia de que el 4 de febrero de 1993, al diligenciar una orden de allanamiento en dicha propiedad, las autoridades ocuparon material relacionado con el juego de la bolita, cuya evidencia fue subsiguientemente suprimida casi un (1) año después por el foro de instancia mediante su Resolución de 7 de febrero de 1994. Dicha resolución fue confirmada por este Tribunal en el caso de *Pueblo v. Negrón Martínez II,* 143 D.P.R. 24 (1997).

[2] Dispone la primera sección de la Ley Núm. 220 de 15 de mayo de 1948 (33 L.P.R.A. sec. 1247):

"Por la presente se declara estorbo público los juegos generalmente conocidos como 'bolita', 'bolipul', combinaciones clandestinas relacionadas con los 'pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas en el Estado Libre Asociado de Puerto Rico y su jurisdicción territorial y marítima."

Por su parte, dispone la Sec. 10 de esa ley, 33 L.P.R.A. sec. 1256:

"Sec. 1256. — Dueño, administrador, etc., de juegos prohibidos; juicio por tribunal de derecho.

1993, el tribunal de instancia determinó que no existía causa probable para sostener los cargos, por razón de que el registro efectuado como parte de la confiscación era patentemente ilegal. El Ministerio Público solicitó una vista preliminar en alzada, la cual se celebró el 16 de julio de 1993. En esa vista el tribunal encontró causa probable contra los acusados, pero deliberadamente no consideró la legalidad del registro por entender que tal evaluación era improcedente en esa etapa preliminar.

El Ministerio Público presentó cargos contra los peticionarios de epígrafe y el 18 de agosto de 1993 éstos presentaron una moción para la supresión de evidencia a tenor de lo dispuesto por la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En la moción arguyeron que la evidencia ocupada por el Estado, mientras se diligenció la orden de confiscación, era inadmisible pues ésta fue ejecutada en contravención a la Sec. 10 del Art. II de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, y la Cuarta Enmienda de la Constitución de Estados Unidos, L.P.R.A., Tomo 1.

El tribunal de instancia celebró una vista para dilucidar la supresión solicitada. Mediante prueba testifical, el Ministerio Público sostuvo que la orden de confiscación fue emitida el 24 de marzo de 1993 por el Fiscal Especial de la División de Confiscaciones del Departamento de Justicia, a nombre del Secretario de Justicia y que, al amparo de lo dispuesto por el Art. 3(1)(c) de la Ley Núm. 93 de 13 de julio de 1988 (34 L.P.R.A. sec. 1723a(1)(c)), se emitió la orden sin que hubiese mediado una autorización judicial. El Fiscal Especial testificó que la orden de confiscación estaba fundamentada en que el 4 de febrero de 1993 se diligenció una orden de allanamiento en los predios de la re-

---

"Todo dueño, apoderado, agente, encargado, director o administrador de los juegos prohibidos por las secs. 1247 a 1257 de este título será reo de delito grave, y será arrestado inmediatamente, dándose traslado del caso sin demora al fiscal con jurisdicción, y convicta que fuere dicha persona, será castigada con pena de presidio que no será menor de un (1) año ni mayor de diez (10) años; Disponiéndose, que todos los juicios por infracción a la presente sección se celebrarán por tribunal de derecho exclusivamente; y Disponiéndose, además, que toda persona que fuere convicta de una infracción a las disposiciones de esta sección no podrá acogerse a los beneficios de las secs. 1026 a 1029 del Título 34."

sidencia de los peticionarios, donde se ocupó material involucrado con el juego ilegal de la bolita. Expuso que los peticionarios fueron denunciados criminalmente por haber estado implicados en la dirección del juego ilegal, en violación a la Ley Núm. 220, *supra*, 33 L.P.R.A. secs. 1247–1257. Expresó que esa denuncia estaba aún pendiente al momento de expedir la orden de confiscación. El Estado también presentó testimonio de que el mismo día de la emisión de la orden de confiscación, fiscales y agentes de la Policía, luego de identificarse y explicar su propósito a los peticionarios, armados con la orden, entraron a la residencia para incautarla. Éstos, entonces, procedieron a desalojar de la residencia a los peticionarios y a tomar posesión tanto de la propiedad inmueble como de la mueble situada en los predios. Entre el material mueble confiscado se encontró material relacionado al juego ilegal de la "bolita".

Luego de evaluar la prueba presentada por las partes, el tribunal de instancia denegó la moción de supresión mediante una resolución emitida el 8 de octubre de 1993. Ese foro fue del criterio de que la confiscación estaba amparada en una ley especial que faculta al Estado a incautar propiedad sin que medie una orden judicial, por lo que el registro e incautación de evidencia encontrada en los predios confiscados no fue obtenida de manera repulsiva a las protecciones constitucionales pertinentes.

Inconformes con esa determinación, los peticionarios acudieron a este Tribunal mediante la Petición de *certiorari* de 26 de octubre de 1993. El recurso planteó dos (2) errores, los cuales exponemos a continuación:

PRIMER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE SUPRESIÓN DE EVIDENCIA, Y POR CONSIGUIENTE, AL DETERMINAR QUE EN EL PRESENTE CASO EXISTIÓ ALGUNA DE LAS CIRCUNSTANCIAS PARTICULARES QUE VALIDAN UN REGISTRO Y ALLANAMIENTO SIN ORDEN JUDICIAL.
SEGUNDO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR QUE LA CONFISCACIÓN

LLEVADA A CABO EN EL PRESENTE CASO, Y POR ENDE EL REGISTRO Y OCUPACIÓN DE LA EVIDENCIA, NO FUE UNA ILEGAL EN VIOLACIÓN A LA SECCIÓN 10 DEL ARTÍCULO II DE LA CONSTITUCIÓN DEL ESTADO LIBRE ASOCIADO Y LA CUARTA ENMIENDA DE LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS.

Expedimos el recurso solicitado el 27 de octubre de 1993. El 18 de febrero de 1994 acogimos una solicitud de las partes peticionarias de que se considerase su petición de *certiorari* como su alegato en el caso.[3] El Ministerio Público sometió su alegato el 28 de marzo de 1994. Perfeccionado el recurso, el 30 de abril de 1997 emitimos sentencia para confirmar la resolución recurrida. En ella expusimos que, al amparo de la Regla 5(b) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A, y en la ausencia de una mayoría de los jueces que intervengan para revocar la Sentencia recurrida, al producirse un empate en la votación, ésta se confirmó.[4] Las partes peticionarias presentaron una moción de reconsideración el 15 de mayo de 1997 y el Ministerio Público se opuso a ella por medio de un escrito sometido el 23 de mayo de 1997.

En reconsideración, *revocamos la resolución emitida por el tribunal de instancia el 8 de octubre de 1993 y decretamos que la evidencia inculpatoria descubierta como resultado de la confiscación efectuada es inadmisible en evidencia.*

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado Señor Rebollo López emitió una opinión concurrente, a la cual se unieron la Juez Asociada Señora Naveira de Rodón y el Juez

---

[3] Véase la "Moción Solicitando se Permita Someter Petición de *certiorari* en Sustitución de Alegato" presentada por las partes peticionarias el 27 de enero de 1994.

[4] El Juez Asociado Señor Rebollo López, la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton revocarían. El Juez Asociado Señor Negrón García, el Juez Asociado Señor Fuster Berlingeri y el Juez Asociado Señor Corrada Del Río confirmarían. El Juez Presidente Señor Andréu García se inhibió. Véase la sentencia y opiniones de 30 de abril de 1997, *Pueblo v. Negrón Martínez I*, 143 D.P.R. 1 (1997).

Asociado Señor Hernández Denton. El Juez Asociado Señor Corrada Del Río emitió una opinión concurrente. El Juez Asociado Señor Negrón García emitió una opinión disidente. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente. El Juez Presidente Señor Andréu García se inhibió.

*(Fdo.)* Carmen E. Cruz Rivera
*Subsecretaria del Tribunal Supremo*

— O —

Opinión concurrente emitida, en etapa de reconsideración, por el Juez Asociado Señor Rebollo López, a la cual se unen los Jueces Asociados Señora Naveira de Rodón y Señor Hernández Denton.

En el día de hoy *reiteramos* el criterio que sostuviéramos el 30 de abril de 1997 a los efectos de que procede decretar la supresión de la evidencia incautada por el Estado en la residencia de los peticionarios Negrón Martínez el 24 de marzo de 1993.

Ello es, llana y sencillamente, debido a que, como expresáramos en nuestra Opinión disidente de 30 de abril de 1997, "consideraciones de orden público, básicas a nuestro sistema democrático de gobierno, impiden que se le permita al Estado sostener la legalidad de una confiscación civil a base de evidencia previamente suprimida, en un procedimiento criminal relacionado, por ser la misma producto de un allanamiento ilegal". *Pueblo v. Negrón Martínez I*, 143 D.P.R. 1, 15 (1997), opinión disidente.

Cualquier fundamento de índole constitucional, utilizado en el día de hoy por otros miembros del Tribunal con el propósito de sostener la ilegalidad de dicha incautación, resulta ser totalmente innecesario. Dicho curso de acción, dados los hechos particulares del presente caso, viola una de las normas jurisprudenciales más arraigadas y correctas: aquella que predica la abstención y prudencia judicial

ante planteamientos constitucionales cuya consideración no es necesaria para resolver el caso.

## I

El tribunal de instancia determinó que un allanamiento efectuado por agentes del orden público el *4 de febrero de 1993* en la residencia del peticionario Negrón Martínez era ilegal; razón por la cual procedió a *suprimir* la evidencia delictiva —consistente de material relacionado con el juego ilegal de la "bolita"— ocupada ese día en dicha residencia por los agentes policíacos. Una mayoría de los integrantes de este Tribunal *confirmó* dicho dictamen judicial mediante Sentencia de 30 de abril de 1997, *Pueblo v. Negrón Martínez I*, ante.[1]

En el entretanto, y basándose en la evidencia delictiva que la Policía había ocupado el 4 de febrero de 1993, el *24 de marzo de 1993* un fiscal del Departamento de Justicia expidió una "orden de confiscación" contra la residencia de Negrón Martínez, amparándose para ello en las disposiciones del Art. 3(1)(c) de la Ley Uniforme de Confiscaciones de 13 de julio de 1988, según enmendada, 34 L.P.R.A. sec. 1723a(1)(c) (en adelante Ley de Confiscaciones de 1988). Al diligenciar *ese mismo día* la referida "orden de confiscación", los agentes del orden público ocuparon, nuevamente, en dicha residencia material relacionado al juego ilegal de la "bolita".

En esta ocasión, el tribunal de instancia declaró *sin lugar* la moción de supresión de evidencia que radicara la distinguida representación legal de Negrón Martínez. Inconforme, el peticionario acudió ante este Tribunal en revisión —vía *certiorari*— de la mencionada denegatoria. Habiéndose inhibido el Señor Juez Presidente Hon. José A. Andréu García, los restantes seis (6) Jueces de este Tribu-

---

[1] Votaron para *confirmar* al tribunal de instancia los Jueces Asociados Señor Rebollo López, Señora Naveira de Rodón, Señor Hernández Denton y Señor Corrada Del Río. El Juez Asociado Señor Negrón García *disintió*. El Juez Presidente Señor Andréu García se *inhibió* y el Juez Asociado Señor Fuster Berlingeri *no intervino*.

nal se *dividieron* tres (3) a tres (3).([2]) En consecuencia, el 30 de abril de 1997 se emitió una sentencia *confirmatoria* de la resolución recurrida que denegó la supresión en cuanto a la evidencia delictiva ocupada el 24 de marzo de 1993. *Pueblo v. Negrón Martínez II*, 143 D.P.R. 24 (1997).

Negrón Martínez solicitó *reconsideración* de dicha actuación judicial. En el día de hoy, una mayoría del Tribunal determina que la actuación del Estado fue ilegal y ordena la supresión de la evidencia incautada. Dicha posición mayoritaria hoy se obtiene debido al hecho de que uno de los integrantes del Tribunal que el 30 de abril de 1997 fue del criterio que la actuación gubernamental era una legal —el Juez Asociado Señor Corrada Del Río— ahora sostiene la ilegalidad de la misma. Al así hacerlo, el Juez Corrada Del Río en su opinión concurrente, pág. 895, señala que es *inconstitucional* el mencionado Art. 3(1)(c) de la Ley de Confiscaciones de 1988 "en tanto y en cuanto [el mismo] permite la confiscación de bienes inmuebles sin notificación y vista previa".

¿Es ello realmente necesario y correcto? ¿No se supone que este Tribunal evada entrar a dilucidar la constitucionalidad de un estatuto si el caso puede ser resuelto, de forma correcta, por otros fundamentos?

## II

En la opinión disidente que emitimos el 30 de abril de 1997 —en la cual sostuvimos que procedía la *revocación* de la resolución denegatoria de la supresión que solicitó Negrón Martínez en relación con la evidencia delictiva ocupada el 24 de marzo de 1993, evidencia ocupada a base de

---

([2]) Votaron por *confirmar*, los Jueces Asociados Señores Negrón García, Fuster Berlingeri y Corrada Del Río. Debe recordarse que este último había votado por confirmar la resolución suprimiendo la evidencia delictiva ocupada el 4 de febrero de 1993.

Votaron para *revocar* la resolución denegatoria de la supresión solicitada, los Jueces Asociados Señor Rebollo López, Señora Naveira de Rodón y Señor Hernández Denton.

la orden de incautación expedida por un fiscal del Departamento de Justicia de Puerto Rico— señalamos que:

> Hemos resuelto, de manera enfática, que consideraciones de orden público, básicas a nuestro sistema democrático de gobierno, impiden que se le permita al Estado sostener la legalidad de una confiscación civil a base de evidencia previamente suprimida, en un procedimiento criminal relacionado, por ser la misma producto de un allanamiento ilegal. Al referirnos a la *"regla de exclusión"*, contenida en la Sec. 10 del Art. II de nuestra Constitución, ante, expresamos en *Toll y Sucn. Rivera Rojas v. Adorno Medina,* 130 D.P.R. 352, 358–359 (1992), en lo pertinente, que:
>
> > *"[P]odemos decir que la regla de exclusión encarna tres (3) propósitos ínsitos en el Art. II, Sec. 10,* supra. *Primero, disuadir y desalentar a los funcionarios del orden público de que violen la protección constitucional (*deterrence*). Se reconoce que este elemento disuasivo realmente es el más fundamental. Segundo, integridad judicial. Los tribunales no deben ser cómplices de actos de desobediencia a la Constitución y admitir evidencia ilegalmente obtenida. Y tercero, impedir que el Gobierno se beneficie de sus propios actos ilícitos; de otra manera la ciudadanía perdería confianza en el Gobierno."*
>
> Además, y como señala el Prof. Ernesto L. Chiesa, la *"regla de exclusión"* se extiende a *"evidencia derivativa"* que ha sido obtenida como *"fruto"* de evidencia primaria que ha sido obtenida ilegalmente, esto es, *"a otra evidencia cuyo origen está vinculado estrechamente a la evidencia obtenida originalmente en violación de la protección constitucional".* Como resulta obvio, estamos hablando de la llamada doctrina *"del fruto del árbol ponzoñoso". (Escolio omitido, énfasis suplido y en el original.) Pueblo v. Negrón Martínez I,* ante, págs. 15–16, opinión disidente.

*En palabras sencillas, no comprendíamos entonces, ni comprendemos ahora, cómo es posible que alguien resuelva que es legal la ocupación de evidencia delictiva cuando la referida ocupación es el resultado de una orden de incautación que está basada en un allanamiento que ha sido declarado ilegal por tribunal competente.* Ese, llana y sencillamente, es el fundamento correcto, desde un punto de vista jurídico, para decretar que la orden de incautación expedida por el Departamento de Justicia en el presente caso y la subsiguiente ocupación de evidencia delictiva son nulas e ineficaces. En otras palabras, resulta totalmente

innecesario entrar a dilucidar, y resolver, si la disposición en controversia de la Ley de Confiscaciones de 1988 es, o no, constitucional.

Como es sabido, desde tiempos inmemoriales existe la llamada norma de abstención, o autolimitación, judicial a los efectos de que un tribunal deberá evitar entrar a juzgar la constitucionalidad de una ley si está a su alcance resolver el caso ante su consideración por otros fundamentos jurídicos. La deferencia que debe tener el Poder Judicial hacia el Poder Legislativo así lo requiere. *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 618 (1981). Ni aun la excusa de que el caso plantea una cuestión de alto "interés público" ha sido aceptada como justificación para violar la llamada norma de abstención judicial.

Como expresara este Tribunal en *E.L.A. v. Aguayo*, 80 D.P.R. 552, 599 (1958):

> Es punto menos que aterradora la visión de una sociedad en la cual jueces nombrados por vida tengan la facultad de juzgar la constitucionalidad de los actos oficiales a nombre exclusivamente del "interés público".

Por los fundamentos antes expresados *concurrimos* con el resultado al que llega hoy la mayoría en el presente caso.

— o —

Opinión concurrente emitida por el Juez Asociado Señor Corrada Del Río.

Concurrimos con la sentencia dictada en el día de hoy por este Tribunal, no porque se aplique a este caso el principio del "fruto del árbol ponzoñoso", el cual entendemos que es inaplicable, ni porque la confiscación fuese ilegal por razón de haber surgido como consecuencia de una orden de allanamiento ilegal, la cual no había sido impugnada al momento cuando ésta se efectuó. Concurrimos por entender que es inconstitucional el Art. 3(1)(c) de la Ley

Núm. 93 de 13 de julio de 1988, según enmendada, conocida como la Ley Uniforme de Confiscaciones de 1988 (en adelante la Ley Núm. 93), 34 L.P.R.A. sec. 1723a(1)(c), en tanto y en cuanto permite la confiscación de bienes inmuebles sin notificación ni vista previa. La evidencia inculpatoria descubierta como resultado de una confiscación ilegal por razón de su inconstitucionalidad es inadmisible en evidencia y debe ser suprimida.

Los hechos del caso están relacionados en la sentencia; por lo cual, no los repetiremos aquí. Explicamos nuestra posición.

## I

Dispone la Quinta Enmienda de la Constitución federal:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb; nor shall be compelled in any ciminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process of law*; nor shall private property be taken for public use, without just compensation. (Énfasis suplido.) U.S.C. Const. Amend. 5.

La Sec. 1 de la Decimocuarta Enmienda de la Constitución de Estados Unidos, por su parte, dispone:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law*; nor deny to any person within its jurisdiction the equal protection of the laws. (Énfasis suplido.) U.S.C. Const. Amend. 14 Sec. 1.

El Tribunal Supremo federal ha expresado, reiteradamente, que el debido proceso de ley aplica a Puerto Rico, bien sea a través de la Quinta o la Decimocuarta En-

mienda de la Constitución de Estados Unidos, *supra.*
Véase *Examining Board v. Flores de Otero*, 426 U.S. 572
(1976); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416
U.S. 663, 668 esc. 5 (1974), y *Fornaris v. Ridge Tool Co.*,
400 U.S. 41 (1970).

Dispone la Sec. 7 del Art. II de la Constitución de Puerto
Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 275:

> Se reconoce como derecho fundamental del ser humano el
> derecho a la vida, a la libertad y al disfrute de la propiedad. No
> existirá la pena de muerte. *Ninguna persona será privada de su*
> *libertad o propiedad sin debido proceso de ley, ni se negará a*
> *persona alguna en Puerto Rico la igual protección de las leyes.*
> No se aprobarán leyes que menoscaben las obligaciones
> contractuales. Las leyes determinarán un mínimo de propiedad
> y pertenencias no sujetas a embargo. (Énfasis suplido.)

A su vez, la Cuarta Enmienda de la Constitución de
Estados Unidos dispone:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizu-
> res, shall not be violated, and no Warrants shall issue but upon
> probable cause, supported by Oath or affirmation, and particu-
> larly describing the place to be searched, and the persons or
> things to be seized. U.S.C. Const. Amend. 4.

Las cortes federales han resuelto que la protección pro-
vista por la Cuarta Enmienda aplica a los procedimientos
civiles de confiscación de propiedad por parte del Estado.
Véanse: *Austin v. United States*, 509 U.S. 602 (1993); *U.S.*
*v. Showalter*, 858 F.2d 149 (3er Cir. 1988); *United States v.*
*$128,035.00 in U.S. Currency*, 628 F. Supp. 668 (S.D. Ohio
1986); *U.S. v. TWP 17 R 4*, 970 F.2d 984 (1er Cir. 1992);
*Application of Kingsley*, 614 F. Supp. 219 (D.C. Mass.
1985); *United States v. Parr*, 716 F.2d 796 (11vo Cir. 1983);
*United States v. Pappas*, 613 F.2d 324 (1er Cir. 1979); *Ply-*
*mouth Sedan v. Pennsylvania*, 380 U.S. 693, 696 (1965), y
*Boyd v. United States*, 116 U.S. 616, 634 (1886).[1]

---

[1] A esos efectos, la Corte de Distrito federal de Ohio expresó elocuentemente en
*United States v. $128,035.00 in U.S. Currency*, 628 F. Supp. 668, 672 (S.D. Ohio
1986), lo siguiente:

Por su parte, la Sec. 10 del Art. II de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 299, establece:

> *No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones, y allanamientos irrazonables.*
> No se interceptará la comunicación telefónica.
> *Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando ·exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.*
> *Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.* (Énfasis suplido.)

Es claro que las disposiciones constitucionales aludidas persiguen garantizarle a cada persona la debida protección de las leyes, en su función sustantiva y procesal, antes de que se le prive de su propiedad. Nótese, además, que los procedimientos civiles de confiscación potencian los derechos ofrecidos por la Sec. 10 del Art. II de la Constitución de Puerto Rico, *supra*, y la Cuarta Enmienda de la Constitución de Estados Unidos. Véanse: *H.M.C.A. (P.R.) Inc., etc. v. Contralor*, 133 D.P.R. 945 (1993), y *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197 (1984).

Hemos resuelto, además, que los requisitos constitucionales del debido proceso de ley aplican a los procedimientos de embargo y prohibición de enajenar. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881 (1993); *Domínguez Talavera v. Tribunal Superior*, 102 D.P.R. 423 (1974), y *Fuentes v. Shevin*, 407 U.S. 67 (1972). Las exigencias del debido proceso aplican a los embargos, independientemente de que la incautación sea temporera. *Fuentes v. Shevin*, supra, pág. 86; *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975).

---

"In considering the claim that seizure of real property ... violates the Fourth Amendment, the Court ... notes that the Fourth Amendment applies to the forfeiture provisions ... because of the statute's punitive, quasijudicial nature. ... Thus, the statute must first comply with the various procedural requirements imposed by the Fourth Amendment." (Citas omitidas.)

Al examinar lo requerido por el debido proceso de ley, encontramos que la Corte Suprema de Estados Unidos estableció en *Mathews v. Eldridge*, 424 U.S. 319 (1976), los tres (3) criterios que deben sopesarse al determinar cuál es el proceso debido para privar a un individuo de algún derecho protegido.[2] Al respecto se examina: (1) el interés afectado por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. Véase *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982). A la luz de los criterios de *Mathews*, la jurisprudencia ha establecido diversos procedimientos para satisfacer las exigencias del debido proceso. Entre los requisitos que debe cumplir todo procedimiento adversativo se encuentran: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente. 2 *Treatise on Constitutional Law: Substance and Procedure* Sec. 17.8, pág. 250 (1986). No obstante, aún cuando "el debido proceso de ley no es abstracción apocalíptica que de sólo invocarlo infunda temor de Dios al tribunal y paralice al adversario, *Domínguez Talavera v. Tribunal Superior*, supra, pág. 428; *Pueblo v. Pérez Santaliz*, 105 D.P.R. 10, 23 (1976), y *Pueblo v. Andréu González*, 105 D.P.R. 315, 320 (1976), el mismo es resguardo infranqueable contra privaciones arbitrarias de la propiedad". J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1986, Vol. II, págs. 337–338.

Como vertiente del concepto "debido proceso de ley", la jurisprudencia interpretativa ha consagrado el derecho fundamental de toda persona a ser oída antes de ser des-

---

[2] Véanse, también: *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974); *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969).

pojada de algún interés protegido; esta oportunidad de ser oído debe ser en: "a meaningful time and a meaningful manner." *Mathews v. Eldridge*, supra, pág. 333. Véase *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123 (1951). Véase, también, H. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267 (1975). La privación de la libertad o de la propiedad sin notificación u oportunidad de ser oído se ha considerado siempre ajena al debido proceso y en ocasiones es una fuente de responsabilidad civil. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950). Un estatuto puede prevalecer sólo si contiene garantías procesales suficientes que permitan que la parte afectada pueda ser oída antes de que se adjudique definitivamente el derecho involucrado, *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974), excepción hecha en aquellas situaciones cuando existan circunstancias extraordinarias que justifiquen lo contrario. *Calero-Toledo v. Pearson Yacht Leasing Co.*, supra. A esos efectos, el Profesor Lawrence Tribe expone:

> ...A *prior hearing* had been required by the traditional conception of procedural due process under the precept that one should be able to continue living in quiet enjoyment of liberty or property unless and until there has been a fair determination that the state is entitled to intrude upon that situation of repose. (Énfasis suplido y en el original.) L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, Sec. 10-7, pág. 673.

A la luz de estos preceptos constitucionales, examinemos el estatuto que rige la confiscación de bienes por parte del Gobierno de Puerto Rico. El Art. 2 de la vigente Ley Núm. 93, *supra*, 34 L.P.R.A. sec. 1723, según enmendada y en lo pertinente, establece de la manera siguiente las circunstancias en las cuales procede la confiscación de propiedad por parte del Estado:

> Toda propiedad que sea utilizada en relación a la comisión de delitos graves y de aquellos delitos menos graves en que por ley se autorice la confiscación, cuando tales delitos graves y menos graves estén tipificados en el Código Penal del Estado Libre

Asociado de Puerto Rico, secs. 3001 *et seq.* del Título 33 [de L.P.R.A.], en la leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, *en las leyes de juegos prohibidos,* bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones, así como en otras leyes y aquella propiedad que esté sujeta a una sentencia de confiscaciones que así lo autorice, será confiscada en favor del Estado Libre Asociado de Puerto Rico. (Énfasis suplido.)

El citado Art. 1 de esta Ley Núm. 93, según enmendada y en lo pertinente, califica, para sus efectos, las propiedades que habrán de ser confiscadas:

Para fines de este Capítulo el término "propiedad" incluye, sin que se entienda como una limitación, bienes muebles o inmuebles, derechos, privilegios, intereses, reclamaciones y valores, dinero en efectivo, vehículos y cualquier otro medio de transportación, utensilios, artefactos, máquinas, equipo, instrumentos y cualquier otro objeto o bien análogo.

Esta ley también establece el procedimiento que debe seguirse para la confiscación de la propiedad. Al respecto, el Art. 3 de la citada Ley Núm. 93, según enmendada y en lo pertinente, dispone:

(1) La ocupación de la propiedad sujeta a confiscación se llevará a cabo por la agencia del orden público o el funcionario a cargo de la implantación de la ley por sí o por conducto de sus delegados, policías o agentes del orden público mediante orden de un magistrado o tribunal competente *o sin previa orden del tribunal en los siguientes casos*:
   (a) Cuando la ocupación se efectúa mientras se lleva a cabo un arresto;
   (b) cuando la ocupación se efectúa en virtud de una sentencia judicial, o
   (c) *cuando la propiedad a ocuparse haya sido utilizada en relación a la comisión de cualquiera de los delitos que se expresan en la sec. 1723 de [esta Parte] previa orden del funcionario a cargo de la implantación de la ley aplicable o sus delegados.*
   (2) El funcionario bajo cuya autoridad se efectúa la ocupación o la persona en la que él delegue notificará el hecho de la ocupación y la tasación o valor estimado de la propiedad ocupada a las personas siguientes:
   (a) Aquellas que por las circunstancias, información y creencia, el funcionario considere como dueños .... (Énfasis suplido.) 34 L.P.R.A. sec. 1723a.

Al interpretar esas disposiciones de ley, debemos tener presente el caso de *Pueblo v. González Cortés*, 95 D.P.R. 164, 168 (1967), en el cual expresamos que las "confiscaciones no son favorecidas por las cortes y los estatutos autorizándoles son interpretados restrictivamente". En *Carlo v. Srio. de Justicia*, 107 D.P.R. 356 (1978), determinamos que, dada la naturaleza punitiva de la confiscación, los estatutos que autorizan esa medida en cuanto a la propiedad de un acusado deben ser interpretados restrictivamente de manera favorable a éste. Esa norma de interpretación fue aplicada a la vigente Ley Núm. 93, *supra*, en *Del Toro Lugo v. E.L.A.*, 136 D.P.R. 973 (1994).

## II

En *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), el Tribunal Supremo federal se expresó sobre la controversia de si la cláusula de debido proceso de ley contenida en la Quinta Enmienda de la Constitución federal requiere que se celebre una vista antes de efectuar el embargo de una propiedad inmueble para que su titular reciba la oportunidad de expresar su posición al respecto. El Tribunal determinó que la vista previa es un ingrediente indispensable cuando se pretende confiscar un bien inmueble.

En el caso citado, agentes de la Policía del estado de Hawaii ejecutaron una orden de registro en el hogar del señor Daniel Good. En los predios encontraron varias sustancias controladas que constituían evidencia inculpante de delito. Seis (6) meses más tarde, Good presentó una alegación de culpabilidad y fue sentenciado a un (1) año de encarcelación, cinco (5) años de probatoria, una (1) multa de mil dólares ($1,000) y el embargo de tres mil ciento ochenta y siete dólares ($3,187) que fueron encontrados en los predios allanados. Cuatro años y medio (4 1/2) después del registro de la residencia, al amparo de lo dispuesto en

21 U.S.C. sec. 881(a)(7),([3]) el Gobierno federal instó una acción *in rem* para la confiscación de esa propiedad inmueble, según el fundamento de que ésta fue utilizada para cometer un crimen federal. En un procedimiento *ex parte*, un magistrado federal encontró que el Gobierno federal cumplió con el peso de probar causa probable de que Good había empleado su casa para fines delictivos, por lo cual ordenó que se procediera con la confiscación del inmueble.

El Gobierno federal confiscó, de esta manera, la propiedad sin proveerle a Good una notificación previa o vista adversativa. Good presentó ante la Corte de Distrito de Estados Unidos para el Distrito de Hawaii una moción para recobrar la propiedad y una contestación a la demanda instada por el Gobierno, en la cual arguyó que el embargo le privó de sus derechos al debido proceso de ley. El tribunal de instancia emitió una sentencia sumaria y autorizó la confiscación. Inconforme, Good acudió a la Corte de Apelaciones para el Noveno Circuito federal, la cual revocó la sentencia recurrida por entender que la confiscación constituyó una violación de la cláusula del debido proceso de ley.

El caso fue entonces llevado al Tribunal Supremo federal. Ante ese foro, el Gobierno federal argumentó que el haber respetado los derechos de Good, según concedidos por la Cuarta Enmienda federal, constituyó una debida y suficiente protección constitucional en relación con la confiscación. En la alternativa, el Gobierno federal arguyó que una confiscación en cumplimiento de las leyes federa-

---

([3]) Provee la parte pertinente de ese estatuto federal, 21 U.S.C. sec. 881(a)(7):

"(a) Subject property

"The following shall be subject to forfeiture to the United States and no property right shall exist in them:

"(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intented to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

les contra la distribución de drogas en nuestra sociedad configura una excepción a lo requerido por el debido proceso de ley. Ambos argumentos fueron desfavorecidos.

El Tribunal Supremo federal razonó en dicho caso que uno de los pilares fundamentales del derecho al debido proceso de ley, según es garantizado por la Constitución, radica en que una parte —que esté en riesgo de ser privada de un derecho o propiedad— sea notificada y se le ofrezca la oportunidad de expresarse en su defensa. Véanse: *United States v. $8,850*, 461 U.S. 555 esc. 12 (1983); *Fuentes v. Shevin*, supra, pág. 82, y *Mullane v. Central Hanover Tr. Co.*, supra, pág. 313. Se evaluó que, ciertamente, la confiscación de la propiedad inmueble de Good constituía una privación de sus derechos sobre propiedad, lo que activó la protección de la cláusula del debido proceso de ley.

En *Del Toro Lugo v. E.L.A.*, supra, expresamos que la esencia de la decisión de *United States v. James Daniel Good Real Property*, supra, es que la confiscación de un bien inmueble activa la protección del debido proceso y requiere que se provea una notificación y vista previa. De manera que la cláusula del debido proceso de ley fue interpretada para que se le extendiera una protección mayor a la confiscación gubernamental de un bien inmueble, que la que se le concede normalmente a los bienes muebles. Véase *U.S. v. Real Property Located at Incline Village*, 976 F. Supp. 1321 (D. Nev. 1997), y 976 F. Supp. 1327 (D. Nev. 1997).

Al respecto de esa distinción, el Tribunal Supremo federal expresó en *Calero-Toledo v. Pearson Yacht Leasing Co.*, supra, pág. 679, que un bien mueble es el "sort [of property] that could be removed to another jurisdiction, destroyed or concealed, if advance notice of confiscation were given". Ese foro estableció que la protección que requiere una vista previa no será activada cuando el bien embargado sea de naturaleza mueble.(4) Ese caso versaba

---

(4) Nótese que al momento del embargo del yate de *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974), el estatuto de Puerto Rico entonces vigente,

sobre el embargo de un yate, por lo que se podía embargar antes de celebrar vista, para evitar que éste fuera escondido o trasladado fuera de la jurisdicción.

Ya que la propiedad mueble carga consigo un riesgo de que la confiscación pueda ser inejecutable si la parte contra quien se tramita recibe una notificación previa, la Corte Suprema federal en *Calero-Toledo v. Pearson Yacht Leasing Co.*, supra, la justificó sin la notificación y vista previa.

En *United States v. James Daniel Good Real Property*, supra, el Tribunal Supremo federal señaló que el bien inmueble no encaja dentro de la excepción previamente creada en *Calero-Toledo v. Pearson Yacht Leasing Co.*, supra, pues, al no existir el riesgo inherente al bien mueble, la confiscación del inmueble requiere una notificación previa, con el propósito de que se le brinde a la parte afectada la oportunidad de acudir al tribunal mediante una vista. Decidió la Corte federal:

> In sum, based upon the importance of the private interests at risk and the absence of countervailing Government needs, we hold that the seizure of real property under S[ec.] 881(a)(7) is not one of those extraordinary instances that justify the postponement of notice and hearing. Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture. *United States v. James Daniel Good Real Property*, supra, pág. 61.

El caso de autos, al igual que el de *United States v. James Daniel Good Real Property*, supra, afecta un bien inmueble. El Tribunal Supremo federal encontró que los recursos que tendría que dedicar el Gobierno al efectuar la notificación y celebrar la vista previa a la confiscación no son significativamente onerosos, por lo que no se justifica obviar estos importantes mecanismos de protección constitucional.

---

que facultó el embargo, 24 L.P.R.A. sec. 2512, y el estatuto federal que le sirvió de base, 21 U.S.C. sec. 881, autorizaban sólo el embargo de bienes muebles. No fue hasta una década más tarde que el estatuto federal de embargo fue enmendado para permitir el embargo de propiedad inmueble. Véase 21 U.S.C. sec. 881(a)(7).

Lo establecido como derecho por la Quinta Enmienda de la Constitución federal, *supra,* según su contenido y su interpretación por el Tribunal Supremo federal, constituye una garantía que es ofrecida, además, por la Sec. 10 del Art. II de nuestra Constitución, *supra. E.L.A. v. Coca Cola Bott. Co.,* supra. Decretaríamos, por lo tanto, la inconstitucionalidad del Art. 3(1)(c) de la Ley Núm. 93, *supra,* en lo que concierne a la confiscación de bienes inmuebles sin notificación y vista previa. Se violaron los derechos de debido proceso de ley de los peticionarios al no haber sido notificados ni haber tenido la oportunidad de una vista antes de la confiscación de su propiedad inmueble.

El caso de autos tampoco presenta circunstancias excepcionales que justifiquen un procedimiento *ex parte* para la confiscación de un bien inmueble. Nuestro sistema de derechos constitucionales desfavorece los procedimientos *ex parte* cuando se encuentra en juego el derecho de propiedad inmueble de una parte que no tuvo la opción de acudir al tribunal para proteger sus intereses. Inspira nuestro criterio la indeleble expresión del Juez Félix Frankfurter del Tribunal Supremo de Estados Unidos en su opinión concurrente en *Anti-Fascist Committee v. McGrath,* supra, págs. 170–173:

> ... [F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights.
>
> ... No better instrument has been devised for arriving at truth than to give a person at jeopardy of serious loss notice of the case against him and oportunity to meet it. (Escolio omitido.)

### III

Nos resta evaluar la admisibilidad de la evidencia descubierta en los predios confiscados. Es nuestro criterio que la evidencia obtenida durante la confiscación ilegal de la propiedad es inadmisible en términos probatorios contra los peticionarios.

Como expusimos anteriormente, la Sec. 10 del Art. II de la Constitución de Puerto Rico, *supra*, contiene el mandamiento de que la "evidencia obtenida en violación de esta sección será inadmisible en los tribunales". De esta sección emerge la "regla de exclusión", la cual sostiene que toda evidencia obtenida ilegalmente no debe ser admitida para inculpar a una parte imputada de haber cometido delito. Sobre esa regla expresamos en *Toll y Sucn. Rivera Rojas v. Adorno Medina*, 130 D.P.R. 352, 358–359 (1992):

> ... [P]odemos decir que la regla de exclusión encarna tres (3) propósitos ínsitos en el Art. II, Sec. 10, *supra*. Primero, disuadir y desalentar a los funcionarios del orden público de que violen la protección constitucional (*deterrence*). Se reconoce que este elemento disuasivo realmente es el más fundamental. Segundo, integridad judicial. Los tribunales no deben ser cómplices de actos de desobediencia a la Constitución y admitir evidencia ilegalmente obtenida. Y tercero, impedir que el Gobierno se beneficie de sus propios actos ilícitos; de otra manera la ciudadanía perdería confianza en el Gobierno.

De conformidad con el requerimiento constitucional, la evidencia que fue obtenida mediante la confiscación ilegal de la residencia de los peticionarios es inadmisible. Esa conclusión es inevadible, pues otra ciertamente constituiría una fractura a los pilares de la protección que ofrece nuestra Constitución.

## IV

Por las razones expuestas, hemos reconsiderado la sentencia emitida por este Tribunal el 30 de abril de 1997; declararíamos inconstitucional el Art. 3(1)(c) de la Ley Núm. 93, *supra*, en tanto y en cuanto permite la confiscación de bienes inmuebles sin una notificación y vista previa; revocaríamos la resolución emitida por el tribunal de instancia el 8 de octubre de 1993, en cuanto a su determinación de la legalidad de la confiscación y la constitucionalidad del Art. 3(1)(c) de la Ley Núm. 93, *supra*; decretaríamos, además, que la evidencia inculpatoria descubierta

como resultado de la confiscación ilegal es inadmisible en evidencia. Por estas consideraciones concurrimos con la sentencia dictada hoy por este Tribunal.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

(En reconsideración)

Reiteramos nuestro criterio disidente expuesto en *Pueblo v. Negrón Martínez I*, 143 D.P.R. 1 (1997), en cuanto a que fue válido el allanamiento realizado el 4 de febrero de 1993 en la residencia de los acusados Negrón-Torres, en virtud de la orden judicial.

Aclarado este extremo, no tenemos dificultad alguna en reconocer la aplicación directa a nuestro ordenamiento de la *regla general* establecida en *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), de que *para confiscar un bien inmueble* es menester una vista judicial previa, con notificación a sus dueños.

Decimos regla general, ya que dicha decisión reconoció posibles excepciones para el Estado prescindir de ese trámite y, a posteriori, justificar la confiscación, si a la luz de las circunstancias implicadas demuestra no haber tenido disponibles métodos menos restrictivos o que eran insuficientes para proteger satisfactoriamente los intereses gubernamentales. Según esta óptica, entre otras, cabrían las excepciones siguientes: la inminente pérdida de la propiedad mediante una posible venta, de su faz válida, a un tercero inocente que esté protegido al amparo de los principios del derecho registral; la destrucción física de la propiedad; su uso continuo para fines delictivos e ilícitos (tales como punto de drogas; imprenta de bolita, etc.), sin que exista tiempo para obtener una orden judicial de registro y allanamiento.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

I

El 30 de abril de 1997 emitimos una sentencia mediante la cual se confirmó un dictamen de instancia, en virtud del cual se había denegado antes una moción de supresión de evidencia presentada por los acusados en el caso de autos. El material delictivo en cuestión se ocupó en una residencia mientras el Ministerio Público ejecutaba una orden de confiscación de esa residencia, la cual fue dictada por el Secretario de Justicia de Puerto Rico. Junto con la aludida sentencia emitida por este Tribunal, acompañamos una opinión de conformidad, en la que expresamos nuestras razones por las cuales no procedía la supresión solicitada. Véase *Pueblo v. Negrón Martínez I*, 143 D.P.R. 1 (1997).

Posteriormente, en reconsideración, los acusados plantearon ante nos un nuevo fundamento para la supresión en cuestión. Alegaron que era inconstitucional la disposición legislativa al amparo de la cual se emitió la orden de confiscación de la propiedad en donde se ocupó el material delictivo. Este nuevo planteamiento fue acogido por uno de los miembros de este Tribunal que originalmente había votado a favor de denegar la supresión solicitada. En consecuencia de ello, ahora este Foro —por voto dividido— ordena dicha supresión.

Yo disiento de esta decisión por las razones que expresé antes en mi Opinión de conformidad de 30 de abril de 1997, y por las que formulo ahora, relativas a mi criterio de que la disposición aludida no es inconstitucional. Veamos.

## II

En ocasiones anteriores hemos reiterado la necesidad de atenuar la severidad del instrumento de la confiscación y hemos reconocido que no es favorecido por los tribunales, por lo que los estatutos que lo autorizan deben ser interpretados restrictivamente.([1]) Tales pronunciamientos los hemos hecho en casos que involucraban la confiscación de la propiedad de *terceros inocentes*, en los cuales la incautación de los bienes en cuestión por el Estado no cumplía con "los propósitos de disuasión que tuvo el legislador de hacerle cara la conducta criminal al empresario que se dedique al tráfico de drogas.([2])

En el caso de autos, la situación que nos concierne *no involucra a posibles terceros inocentes.* Por el contrario, tiene que ver precisamente con individuos alegadamente dedicados a actividades ilícitas. Aquí el instrumento de la confiscación es un arma importante en la lucha contra la terrible actividad criminal que conocidamente azota nuestra comunidad. Por ello tenemos la obligación de ser, en particular, cuidadosos de no privar al Estado innecesariamente de esa arma importante.

## III

Se alega que es inconstitucional una disposición de la Ley Uniforme de Confiscaciones de 1988 que autoriza al Secretario de Justicia de Puerto Rico a emitir una orden para confiscar una propiedad inmueble que había sido utilizada para actividad criminal, sin una vista judicial previa a tal incautación. Se aduce que la inconstitucionalidad de dicha disposición surge de lo resuelto por el Tribunal Supremo de Estados Unidos en *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993).

---

([1]) *General Accident Ins. Co. v. E.L.A.*, 137 D.P.R. 466 (1994); *Alvenre Corp. v. Srio. de Justicia*, 130 D.P.R. 760 (1992).

([2]) *Alvenre Corp. v. Srio. de Justicia*, supra.

No cabe duda de que este Foro debe interpretar las disposiciones de nuestra propia Carta de Derechos "de manera compatible con la protección que ofrecen a esas libertades básicas y garantías personales iguales o similares disposiciones de la Constitución de los Estados Unidos, y no en menor grado de protección, según éstas son o sean interpretadas y aplicadas por el Tribunal Supremo de los Estados Unidos". *R.C.A. v. Gobierno de la Capital*, 91 D.P.R. 416, 427–428 (1964). Ciertamente son vinculantes para este Tribunal las decisiones pertinentes del más alto Foro judicial federal.

Lo anterior no significa, sin embargo, que estemos obligados a ser "muñeco de ventrílocuo".(³) Debemos aplicar las decisiones aludidas en nuestra propia jurisdicción, pero podemos hacerlo *con discernimiento.* Nuestro compromiso es propiamente con los valores y principios jurídicos de la Carta de Derechos de la Constitución de Estados Unidos, según los interprete el Tribunal Supremo federal, pero nada nos requiere corear al dedillo sus dictámenes particulares. No tenemos que extender una decisión del Tribunal Supremo de Estados Unidos a una situación particular en Puerto Rico si es claro que el propio foro federal no lo haría.

La situación que nos concierne aquí es circunstancialmente muy distinta de la que tuvo ante sí el Tribunal Supremo norteamericano en *United States v. James Daniel Good Real Property*, supra. Se trata de situaciones claramente distinguibles. En el caso aludido, la confiscación de la propiedad inmueble por el Estado ocurrió *casi cinco años después* de haberse ocupado drogas en ésta. Más aún, al momento de la confiscación, la *propiedad estaba en la posesión de terceros,* quienes la usaban *para fines enteramente lícitos.* No existía allí razón alguna para haber orde-

---

(³) En el ámbito judicial, el concepto *ventriloquist's dummy* fue formulado por el Juez Jerome Frank para describir la obligación de los jueces federales de aplicar el derecho estatal en los casos cuando ello sea pertinente. *Richardson v. Commissioner of Internal Revenue*, 126 F.2d 562, 567 (2do Cir. 1942). Se adopta analógicamente aquí para referirnos a la obligación de jueces estatales respecto al derecho federal.

nado la confiscación sin una vista judicial previa. En el caso de autos, en cambio, la confiscación se ordenó pocos días después de haberse ocupado material ilícito en la propiedad en cuestión. Ésta continuaba en manos de su dueño, quien había sido acusado por la comisión de delitos y, al confiscarse la propiedad, ésta *aún continuaba usándose* para fines criminales. Se justificaba, pues, que la vista judicial que requiere el debido proceso de ley se celebrase *después* de la incautación.

En su opinión en *United States v. James Daniel Good Real Property*, supra, que fue una decisión con voto de 5–4, la propia mayoría del Tribunal Supremo federal reconoció que existen situaciones en las cuales puede posponerse la vista judicial hasta después de la incautación. Una de éstas es cuando ello es necesario para evitar que continúe la actividad criminal en la propiedad incautada. Tal es la situación en el caso de autos. Aquí, evidentemente, el allanamiento previo de dicha propiedad no había sido suficiente para evitar su continuado uso para fines delictivos. La expedita incautación de ésta era necesaria para conculcar su uso en actividades criminales. Estaba justificado, pues, posponer la vista judicial.

Más aún, la mayoría en *United States v. James Daniel Good Real Property*, supra, señaló que la vista judicial previa a la incautación existe para evitar que dueños inocentes sean privados de su propiedad por error o arbitrariamente. Tales fines evidentemente no aplican al caso de autos. En éste, la celebración de una vista judicial previa a la incautación no hubiese servido ningún propósito público importante.

Finalmente, en vista de que el derecho al debido proceso de ley es de naturaleza *circunstancial, Connecticut v. Doehr*, 501 U.S. 1 (1991); *Pueblo v. Andréu González*, 105 D.P.R. 315 (1976), deben tenerse en cuenta otras circunstancias, muy particulares a Puerto Rico, que no estaban presentes en *United States v. James Daniel Good Real Property*, supra. Estas otras circunstancias son relativas a la protección del interés público, que es uno de los elementos

que el Tribunal Supremo de Estados Unidos ha reconocido que debe sopesarse al decidir si procede una confiscación sin una vista judicial previa.[4] Nuestro país se encuentra afligido por una horrenda plaga de actividad criminal de inconmensurable dimensión. *La generalidad de las comunidades norteamericanas no encaran ni sufren nada parecido.* En efecto, según informes federales y de las Naciones Unidas, pocos lugares en el mundo tienen problemas de criminalidad de la magnitud de los que experimenta nuestra isla. Recientemente, en una reunión internacional, se catalogó a Puerto Rico como uno de los paraísos de los narcotraficantes.

Más aún, es claro que nuestro gobierno insular no tiene la capacidad para encarar la abrumadora realidad del crimen que tiene el gobierno federal. Éste tiene recursos y aptitudes que el nuestro carece.

Estos dos datos de evidente comprobación hacen nuestra situación muy distinta también de la del caso de *United States v. James Daniel Good Real Property*, supra. En éste, el poderoso Gobierno federal no tenía razones válidas para actuar como lo hizo, en una instancia en la cual la celebración de la vista judicial previa no presentaba riesgo o amenaza alguna a la protección del interés público. Tal no es el caso de Puerto Rico en situaciones como la de autos. La gravedad del problema del crimen en nuestra isla y las limitaciones de nuestros recursos policíacos le dan un carácter urgente a confiscaciones como la que aquí nos concierne. Para nuestro país, privar al Estado de usar expeditamente el instrumento de la confiscación como arma contra los criminales, sólo significa empeorar la grave crisis de abuso e indefensión que sufre nuestra gente, algo que ciertamente no ocurría en la situación concreta de *United States v. James Daniel Good Real Property*, supra.

Como a conciencia no puedo votar por la aplicación ciega de *United States v. James Daniel Good Real Property*, supra, a la distinguible situación de autos, y como estimo que

---

[4] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

el material delictivo en cuestión fue ocupado lícitamente durante una confiscación válida del inmueble donde se encontraba, disiento de lo que ahora, por razones diversas, dispone una mayoría del Tribunal.